[Cite as *In re J.B.*, 2024-Ohio-2407.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

IN THE MATTER OF:

J.B., DELINQUENT CHILD

CASE NO. 2023-T-0103

Criminal Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2022 JD 00126

**O P I N I O N**

Decided: June 24, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Appellee, State of Ohio).

*David L. Engler*, 1451 East Market Street, Warren, OH 44483 (For Appellant, J.B.).

EUGENE A. LUCCI, P.J.

{¶1}   Appellant, J.B., appeals the judgment adopting a magistrate's decision and issuing dispositional orders following her admission to a delinquency complaint.  We affirm.

{¶2}   In 2022, J.B. and two other juveniles went joyriding in a stolen truck.  As a result, a complaint was filed in the trial court alleging J.B. to be a delinquent child for committing the following offenses that would constitute felonies if committed by an adult: failure to comply with an order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331(B)(C)(5)(a)(ii); and theft, a felony of the fourth degree, in

violation of R.C. 2913.02(A)(1). J.B. initially pleaded "not true," thus denying the allegations of the complaint.

{¶3} During the proceedings, J.B. maintained that her actions that resulted in the charges at issue were caused by her state of mind following a sexual assault she had suffered at school. At a pretrial hearing, the issue of whether J.B. was eligible for the court's diversion program was discussed between counsel and the magistrate. The magistrate concluded that diversion potentially could be issued in lieu of dispositional orders if J.B. and the state agreed on charges to which J.B. would plead.

{¶4} Ultimately, the present matter was set for adjudicatory hearing before the magistrate on April 10, 2023. Just prior to the date set for adjudicatory hearing, on April 6, 2023, J.B. moved for a stay. In her motion, J.B. maintained that no determination had been made pursuant to Juv.R. 9(A) and (B) with regard to whether formal court action could be avoided in this case. The trial court denied the motion on the day it was filed. On the same day, J.B. filed a motion to dismiss "pursuant to Ohio Juvenile Rule 9 and Juvenile Rule 29(K)(1)." The state responded in opposition the next day. On the date set for adjudicatory hearing, the magistrate denied the motion to dismiss. Thereafter, J.B. entered a "true" plea, admitting the allegations of the complaint. The magistrate accepted the plea, and the matter was set for dispositional hearing.

{¶5} At the dispositional hearing, the magistrate determined that J.B. should be confined to the Trumbull County Juvenile Detention Center for a term of one to thirty days, with credit for time served, and the balance of the term suspended; that she should be placed on probation; and that she should pay restitution in certain amounts to the owners of the property that was damaged due to the juveniles' actions. Thereafter, a magistrate's

2

decision incorporating the dispositional orders was filed, and J.B. filed objections. On December 1, 2023, the trial court overruled J.B.'s objections and entered judgment adopting the magistrate's decision and independently issuing the above dispositional orders.

{¶6} In her first assigned error, J.B. argues:

The lower court erred in not concluding that the blanket rule barring juveniles charged with felonies from consideration for the benefits afforded by Rule 9(A), Ohio Rules of Juvenile Procedure adopted by the Trumbull County Juvenile Court violates the letter and spirit of the Ohio Rules of Juvenile Procedure.

{¶7} Pursuant to Juv.R. 1(B), the Rules of Juvenile Procedure "shall be liberally interpreted and construed so as to effectuate the following purposes:"

(1) to effect the just determination of every juvenile court proceeding by ensuring the parties a fair hearing and the recognition and enforcement of their constitutional and other legal rights;

(2) to secure simplicity and uniformity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay;

(3) to provide for the care, protection, and mental and physical development of children subject to the jurisdiction of the juvenile court, and to protect the welfare of the community; and

(4) to protect the public interest by treating children as persons in need of supervision, care and rehabilitation.

{¶8} At issue in this case is Juv.R. 9, titled "Intake," which provides:

(A) Court Action to Be Avoided. In all appropriate cases formal court action should be avoided and other community resources utilized to ameliorate situations brought to the attention of the court.

3

(B) Screening; Referral. Information that a child is within the court's jurisdiction may be informally screened prior to the filing of a complaint to determine whether the filing of a complaint is in the best interest of the child and the public.

{¶9} "It is clear from the language of Juv.R. 9 that formal court action is permissible in appropriate cases, and that it is within the discretion of the juvenile court to proceed in such a manner." *In re Corcoran*, 68 Ohio App.3d 213, 216 (11th Dist. 1990). Accordingly, "some—but not all—juvenile complaints go to a 'formal' delinquency proceeding." *In re D.S.*, 2017-Ohio-8289, ¶ 8. Pursuant to Juv.R. 9(A), "in an appropriate case, a juvenile court may reasonably exercise its discretion to dismiss a juvenile complaint upon the evidence available on the face of the complaint." *D.S.* at ¶ 10. In addition, "the juvenile court is entitled to dismiss a complaint even after the allegations of the complaint are established at the adjudicatory hearing if it is in the best interests of the child or the community." *In re Brant*, 2005-Ohio-6577, ¶ 12 (11th Dist.), citing *In re Dodson*, 1996 WL 98730 (3d Dist. Mar. 4, 1996), citing Juv.R. 29(F)(2)(d) ("Upon the determination of the issues, the court shall do one of the following: . . . If the allegations of the complaint, indictment, or information are admitted or proven, do any one of the following, unless precluded by statute: . . . Dismiss the complaint if dismissal is in the best interest of the child and the community.").

{¶10} Here, J.B. contends that, at the time of the proceedings in the trial court, the court enforced a "blanket policy" of precluding juveniles alleged of committing felony offenses from initial screening to avoid formal court action. J.B. maintains that this blanket policy violates Juv.R. 9, which does not distinguish between felony delinquency cases or other juvenile cases. In support of her claim that adherence to the blanket policy resulted

4

in error, J.B. relies on *In re the Transfer of Structured Settlement of P. Anderson*, 2020-Ohio-5408, ¶ 10 (2d Dist. 2020), which noted:

> There is a distinction between the refusal to exercise discretion at all and an abuse of discretion. A court's "blanket refusal" to consider an option before it is a refusal to exercise discretion. Where discretion is called for, we have consistently concluded that adherence to a blanket policy is an abuse of discretion.

(Citations omitted.)

{¶11} Initially, we note that the court's "blanket policy" at issue was not contained in its Local Rules. Instead, it was incorporated in a written policy signed by the judges of the court and dated May 12, 2015. The policy is included in the record as an exhibit to a copy of a class action complaint J.B. filed in federal court against the judge assigned to this case. *See J.B. v. Harwood*, 2023 WL 8529101 (N.D.Ohio Dec. 7, 2023). J.B.'s counsel attached the federal class action complaint to an affidavit of prejudice that sought, unsuccessfully, to disqualify the judge in the instant proceedings. The state does not dispute the authenticity of this policy or that this policy was in effect at the time of the proceedings herein.[1]

{¶12} The written policy pertained to the trial court's diversion department. It provided that the diversion supervisor was to carefully review and screen incoming complaints to determine whether a complaint should be diverted or formally processed

---

1. After filing her appellant's brief, J.B. moved to supplement the record with a revised policy dated December 14, 2023, shortly after the court issued its dispositional order in this case. This court denied the motion to supplement for failure to set forth a proper basis for supplementing the record. *See State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

Case No. 2023-T-0103

based on several factors. The policy provided that "[a]ll felony complaints will be formally processed."[2]

{¶13} In the present case, the policy was discussed at a pretrial hearing with the magistrate. During the hearing, the following exchange occurred:

> [COUNSEL FOR J.B.]: Yes, Your Honor, on behalf of my client and her family, this is a very difficult matter. In talking with the Prosecutor in this case and understanding what the principles and purposes of juvenile court are to address issues regarding the behavior that my client had been stopped for, I have a fundamental difference in this matter, Your Honor.
>
> THE COURT: I understand.
>
> [COUNSEL FOR J.B.]: Is that this should be a diversion program. And the Prosecutor said that it's his office's policy that felonies don't get turned into diversion.
>
> [PROSECUTOR]: Can I correct you? That's the Court's policy, not the Prosecutor's. It's the Court's policy.
>
> [COUNSEL FOR J.B.]: Okay. But if, you know, I don't -- okay, if you said that, fine.
>
> THE COURT: I understand.

{¶14} Thereafter, counsel for J.B. explained that, prior to the incident alleged here, J.B. had been the victim of a sexual assault at school. The magistrate then explained that he did not want many of the facts of the separate case on the record at that time, but "that would be considered for mitigation and purposes of disposition, which could include a diversion or not. You know, I can't tell you that right now until we have a hearing on

---

2. In her brief, J.B. quotes a portion of the policy that applies to complaints brought against juveniles who are on probation. The record does not indicate that J.B. was on probation at the time of the submission of the complaint in the instant case. However, the policy provision that complaints alleging felony offenses would be formally processed supports J.B.'s position that the policy precluded a pre-filing diversion assessment.

6

Case No. 2023-T-0103

that issue, if we go down that road." After a discussion regarding the status of plea negotiations at the same hearing, the following exchange occurred:

[COUNSEL FOR J.B.]: You just heard [the prosecutor] indicate that it's the Court's policy that no felony will be reduced to diversion. And that's where we're at an impasse because --

THE COURT: As a general rule --

[COUNSEL FOR J.B.]: -- they're not going to offer it.

THE COURT: -- the policy of the Court is no felonies are sent to diversion immediately. Now, does that never happen? No.

[COUNSEL FOR J.B.]: Correct.

THE COURT: It has happened, it can happen. There is no written rule that says it can't happen. Okay? We do have policies in place. We follow those for a reason because we have to have processes for the complaints when they come in. I can make a determination, and I'm not going to tell you it will go to diversion or won't go to diversion.

[COUNSEL FOR J.B.]: I wouldn't expect you to.

THE COURT: And I will make that decision if you guys can reach an agreement on the charges. I'll allow you to present evidence and testimony at a separate dispositional hearing and I can make a decision at that time and would allow the father to testify, the mother and father, if they choose to, to testify. I have no problem with that.

[COUNSEL FOR J.B.]: Thank you, Your Honor. And I will bring in the therapist who will say that but for, but for that, this doesn't happen.

THE COURT: And I think that's all relevant to disposition.

[COUNSEL FOR J.B.]: Correct.

THE COURT: I don't think it's relevant to adjudication. I mean, it is what it is. What happened may have happened, didn't happen. That's a whole different separate issue of adjudication. I don't think any of that is relevant to

7

Case No. 2023-T-0103

adjudication, you know, whether she did or didn't commit this offense, but I do think it's relevant to disposition. I think it's very relevant to disposition.

{¶15} Later at the hearing, the prosecutor expressed concern that he had been informed of certain rules regarding diversion that would preclude diversion in felony cases. The magistrate thereafter explained: "I have been discussing this with [the judge assigned to the case], and she says I am free to send any case to diversion that I believe is appropriate for diversion. There is no rule on a felony. That's what I was told."

{¶16} Based on the foregoing, assuming, without deciding, that J.B. did not waive her argument with respect to the trial court's intake policy by virtue of her admission to the charges, we cannot discern any prejudice to J.B. resulting from this policy. While we agree that the policy precluded screening of her complaint prior to the commencement of "formal court action," the magistrate did not exclude diversion as a potential option in this case. Although our opinion should not be read as either endorsing or disapproving the trial court's policy or the magistrate's determination as to when diversion should be considered, the record reflects that the court ultimately exercised its discretion in implicitly declining to refer the case to diversion when it imposed dispositional orders. *See* Juv.R. 29. There is no indication in the record that, had the trial court informally screened the complaint prior to its filing, it would have exercised this discretion differently and determined the case was appropriate to divert from official court action.

{¶17} Accordingly, J.B.'s first assigned error lacks merit.

{¶18} In her second assigned error, J.B. argues:

The lower court erred in accepting J.B.'s plea of "true" after J.B. stated unequivocally that her plea was not voluntary.

8

Case No. 2023-T-0103

**{¶19}** Juv.R. 29(D), which governs a trial court's acceptance of a juvenile's admission to a complaint, provides:

> The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
>
> (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
>
> (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
>
> The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.

**{¶20}** "As many Ohio courts of appeals recognize, 'An admission in a juvenile proceeding, pursuant to Juv.R. 29, is analogous to a guilty plea made by an adult pursuant to Crim.R. 11 in that both require that a trial court personally address the defendant on the record with respect to the issues set forth in the rules.'" *In re C.S.*, 2007-Ohio-4919, ¶ 112, quoting *In re Smith*, 2006-Ohio-2788, ¶ 13 (3d Dist.).

**{¶21}** Here, J.B. maintains that she did not enter her guilty plea voluntarily because she indicated to the court that she was "forced" to enter a "true" plea. J.B.'s statement was made during the following exchange at the change-of-plea hearing after the magistrate denied her motion to dismiss filed in this case and indicated that he planned to dismiss an unruly charge brought against J.B. in another case:

> THE COURT: 2022 JU 28. So, [J.B.], that would leave you with two charges, failing to comply with the order or signal of a police officer and theft without consent. To those two charges, how do you plead?

9

[COUNSEL FOR J.B.]: True.

[J.B.]: I plead true because I am forced to.

THE COURT: [J.B.], I understand -- I have to go over, even though you have an attorney, I have to ask you some questions to make sure you understand what you are doing, okay? Okay. So, first of all, you understand you have the right to an attorney. You have [counsel for J.B.], who you have had throughout this process, correct?

[J.B.]: Yes.

THE COURT: All right. [J.B.], you have a right to go to trial in this case and at that trial the State would have to prove you guilty beyond all reasonable doubt. By pleading true here today, you are waiving or giving up that right to a trial and the State does not have to prove you guilty because you've admitted to these charges against yourself. Do you understand that?

[J.B.]: Yes.

THE COURT: At that trial, the State would introduce evidence and witnesses against you. And you, with your lawyer, would have the right to cross examine and confront those witnesses. By pleading true you are waiving that right as well. Do you understand that?

[J.B.]: Yes.

THE COURT: And at that trial you would have the right to present your own witnesses in your defense. Even if those witnesses did not want to testify, the Court can issue an order making them or compelling them to appear and testify at your trial. By pleading true, you are waiving that right to present and compel witnesses. Do you understand that?

[J.B.]: Yes.

THE COURT: And you have a right to remain silent throughout the entire process. Which means, no one can make you testify or say anything at any time.

By pleading true here today, you are waiving that right to remain silent as well. Do you understand that?

10

Case No. 2023-T-0103

[J.B.]: Yes.

THE COURT: And if you did go to trial, [J.B.], and this Court ruled against you, first of all, you'd have the right to object to my magistrate's decision within 14 days. And if that were denied, you'd have the right to appeal that decision to a higher court arguing that mistakes have been made. By pleading true, you are waiving that right of appeal only as it regards to this finding of delinquency in this matter, do you understand that?

[J.B.]: Yes.

THE COURT: [J.B.], are you making this decision of your own choice?

[FATHER OF J.B.]: She's forced to.

[J.B.]: Yeah, because I'm forced to.

THE COURT: You're not forced to. You can go to trial, [J.B.].

[COUNSEL FOR J.B.]: [J.B.], the question is -- you know, you and I have talked about this. You can go to trial, but you're saying these facts were all true. You understand that the facts are true?

[J.B.]: They are true but --

THE COURT: Okay.

[J.B.]: I was not in the right state of mind, and then I will not let that define me or who I am going to be in the future.

THE COURT: [J.B.], I don't want that to define who you are going to be. I understand that's a whole different aspect between whether this is true or not true, you understand that?

[J.B.]: Yes, Your Honor.

THE COURT: All right. [J.B.], has anyone promised you anything or threatened you in any way to make you plead true today?

[J.B.]: No, Your Honor.

11

> THE COURT: All right. Then I will accept your plea of true as knowing, intelligent and voluntary; making a finding of delinquency in this matter.

{¶22} Therefore, although J.B. maintained that she was "forced" to plead "true" to the charges, the trial court further inquired as to her meaning. J.B.'s acknowledgment that the facts of the complaint were true and that she was not in the "right state of mind" during the incident clarified her meaning as to how she felt "forced" to enter her plea. J.B. affirmatively acknowledged without qualification that her plea was not the result of any threats or promises, and she indicated her understanding as to the rights she was waiving.

{¶23} Accordingly, J.B. has not established that her plea was involuntary and that the trial court erred in accepting her plea. *Compare State v. Gordon*, 2002-Ohio-2761, ¶ 17 (1st Dist.) (Where defendant expressed his belief "that a trial was no longer an alternative . . . his plea did not represent a free choice from all of the available alternatives.").

{¶24} Therefore, J.B.'s second assigned error lacks merit.

{¶25} The judgment is affirmed.

MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

12

Case No. 2023-T-0103